IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL STEPHEN LEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:04-CV-2260-D |
| VS. | § | |
| | § | |
| TYCO ELECTRONICS POWER SYSTEMS, INC., | § | |
| | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

The instant motion to dismiss requires the court to decide whether defendant has demonstrated that plaintiff's breach of contract claim is preempted by § 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a). Concluding it has not, the court denies the motion.

I

Plaintiff Michael Stephen Lee ("Lee") sues his former employer, Tyco Electronics Power Systems, Inc. ("Power Systems"), to recover for breach of contract[1] arising from its decision to deny him the Extended Compensation Option ("ECO") made available under a collective bargaining agreement ("CBA") in case of a plant closing.[2] Power Systems employed Lee at its Mesquite, Texas

---

[1]Power Systems points out that Lee's proposed second amended complaint omits a claim for intentional infliction of emotional distress, which he had alleged in his first amended complaint. Because Lee has abandoned the claim, the court need not address it.

[2]Because the court is deciding Power Systems' motion under Fed. R. Civ. P. 12(b)(6), it accepts as true the well-pleaded facts alleged in Lee's complaint and views them in the light most favorable to him. *See Capital Parks, Inc. v. Southeastern Adver. & Sales Sys., Inc.*, 30 F.3d 627, 629 (5th Cir. 1994) (citing *O'Quinn v. Manuel*, 773 F.2d 605, 608 (5th Cir. 1985)).

facility, where he was a member of the Communications Workers of America ("CWA"). CWA and Power Systems had entered into a CBA[3] that included the Lucent Career Transition Option Program ("LCTOP"). The ECO was a provision of the LCTOP under which Power Systems could offer surplus employees additional compensation or transition benefits. The parties agree that, under the terms of the CBA, the decision to place an employee in the ECO was within the sole discretion of Power Systems.

Early in 2002 Lee learned that the Mesquite facility would be closed later that year.[4] To obtain his full retirement benefits, Lee was required to be at least 50 years old and attain 30 years of service. In March 2002 Lee turned 50 years old, but he was approximately six months short of the required 30 years of service. Lee determined that it would be advantageous to enroll in the ECO program, through which he could continue receiving weekly income and maintain his employee status until October 23, 2002, when he would reach 30 years of service. On March 20, 2002 Lee sent a letter to Power Systems and CWA invoking the ECO. He expressed the belief he was eligible for enrollment in the program, but he requested that he be notified in writing if either entity contended that he was ineligible or otherwise not entitled to participate. He also advised that, if no such notice was received, he would expect to be placed in the program. He received no indication that Power Systems contested his eligibility or invocation of the ECO.

Lee received an October 2, 2002 letter from a Power Systems benefits consultant notifying

---

[3]Power Systems actually assumed the CBA that CWA had entered into with the prior owner of the Mesquite facility.

[4]The plant closure is the subject of a prior opinion of this court. *See Communication Workers of Am., AFL-CIO v. Tyco Power Sys., Inc.*, 2003WL 22271904 (N.D. Tex. Sept. 2, 2003) (Fitzwater, J.), *aff'd*, 99 Fed. Appx. 499 (5th Cir. 2004) (per curiam) (unpublished opinion).

him of the amount of his monthly retirement benefit. The figure comported with his expectation of his full retirement benefit. Power Systems terminated Lee's employment on November 1, 2002.[5] He received the same day his first retirement benefit check in the amount referenced by the benefits consultant's letter. Later that month, however, he received a second letter that stated that the amount provided in the prior letter was based on his having attained 30 years of service, but that he did not reach this threshold. The benefits consultant informed him that his monthly benefit would be reduced by $318.96. Lee protested unsuccessfully to Power Systems. He subsequently filed this lawsuit, alleging that his March 20, 2002 notice to Power Systems invoking the ECO, coupled with the October 2, 2002 benefits statement that reflected that he would receive full retirement benefits, constituted an enforceable contract[6] and that Power Systems had breached the contract by reducing his monthly benefit.[7]

Power Systems moves to dismiss under Fed. R. Civ. P. 12(b)(6), contending that Lee's common law breach of contract claim is preempted by § 301 of the LMRA. Lee opposes the motion, and he also seeks leave to file a second amended complaint.

---

[5]The details of Lee's severance are not contained in the complaint or briefing, but the court presumes for purposes of this motion that his termination was consistent with his expectations for the ECO program.

[6]Although in his second amended complaint Lee titles his cause of action as a breach of contract claim, he begins the paragraph that alleges a cause of action by stating that he "alleges equitable estoppel," and he alleges that he "detrimentally relied" on Power Systems' representations in not seeking employment in another division or location. 2d Am. Compl. ¶ 14. The court treats the second amended complaint as alleging a cause of action for breach of contract, because the averments indicate that the parties reached an agreement that Power Systems breached, and both parties address the cause of action as a contract claim, *see* D. Reply at 1; P. Supp. Mem. at 2 ("The case at bar deals with a contract between Defendant and Plaintiff.").

[7]For its part, Power Systems refers to Lee's conduct as amounting to nothing more than a unilateral request. *See* D. Br. at 2-3. At the Rule 12(b)(6) stage, of course, the court accepts Lee's well-pleaded version of the facts as true.

II

Lee moves for leave to file a second amended complaint. Power Systems does not oppose the motion, and the court grants it. Lee is directed to sign and file his second amended complaint within 14 days from the date this memorandum opinion and order is filed.[8]

III

The court now turns to Power Systems' motion to dismiss, which presents the question whether Lee's breach of contract claim is preempted by § 301 of the LMRA.

A

Power Systems maintains that Lee's state-law claim is preempted because the right he seeks to enforce derives from the CBA, adjudication of his claim requires analysis of the CBA, and interpretation of the CBA is required to compute damages.[9]

"[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp. v.*

[8]Power Systems has assumed in its motion to dismiss that Lee's second amended complaint is the operative pleading. There is no impediment to the court's now considering the merits of the motion to dismiss in relation to that pleading. *Cf. Holmes v. Nat'l Football League*, 939 F. Supp. 517, 522 n.7 (N.D. Tex. 1996) (Fitzwater, J.) (noting that court may consider sufficiency of amended complaint in response to motion to dismiss filed before that pleading was filed, where defects in complaint to which motion is addressed reappear in amended complaint).

[9]In its final reply brief, Power Systems maintains that Lee's claim is preempted because the LMRA preempts any individual labor contract that is inconsistent with the CBA. This court will not consider an argument first raised in a reply brief. *See, e.g., Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC*, 749 F. Supp. 758, 772 (N.D. Tex. 1990) (Fitzwater, J.) (holding that court will not consider new argument raised in a reply brief). Although this argument may or may not prove fruitful if presented by way of summary judgment motion, the court declines to address it today.

*Lueck*, 471 U.S. 202, 220 (1985) (citation omitted). Section 301 preemption occurs "when a decision on the state claim is inextricably intertwined with consideration of the terms of the labor contract or when the application of state law to a dispute requires interpretation of the collective-bargaining agreement." *Richter v. Merchants Fast Motor Lines, Inc.*, 83 F.3d 96, 97 (5th Cir. 1996) (per curiam) (citations omitted).

> When the resolution of a state law claim substantially depends on the meaning of a collective bargaining agreement, courts must treat the claim as one made under section 301 or dismiss it as preempted by federal labor law. Nonetheless, section 301 does not necessarily preempt every state law claim between the parties to a collective bargaining agreement, nor does it preempt claims only tangentially related to such an agreement.

*Branson v. Greyhound Lines, Inc.*, 126 F.3d 747, 753 (5th Cir. 1997) (citations omitted). An employee covered by a collective bargaining agreement may maintain a state-law contract claim based on legal rights independent of the collective bargaining agreement, but only when the contract relied on is not the collective bargaining agreement. *Wells v. Gen. Motors Corp.*, 881 F.2d 166, 173 (5th Cir. 1989) (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 396 (1987)).

B

Power Systems contends that LMRA § 301 preempts Lee's cause of action because he attempts to enforce rights derived from the CBA. Lee responds that he seeks to enforce rights created by a contract formed between Power Systems and him individually. Under Lee's theory, his March 2002 letter invoking the ECO was an offer that Power Systems accepted, as evidenced by the benefits consultant's first letter.

"Section 301 governs claims founded *directly* on rights created by collective-bargaining agreements[.]" *Caterpillar*, 482 U.S. at 394 (emphasis added). Applying the Rule 12(b)(6)

standard—i.e., accepting as true the well-pleaded facts alleged in Lee's complaint and viewing them in the light most favorable to him—the court holds that the rights Lee seeks to validate are not necessarily founded directly on the CBA. His breach of contract action arises from rights allegedly created by a contract that he and Power Systems formed *inter se*. Although the putative contract incorporates a term from the CBA—the ECO—Lee's claim arises from what he maintains is an individual agreement with Power Systems and does not rest directly on rights the CBA creates.

In *Meredith v. Louisiana Federation of Teachers*, 209 F.3d 398 (5th Cir. 2000), an employee covered by a collective bargaining agreement took a leave of absence and began working for a second employer. She was not covered by a collective bargaining agreement in her second job, but she demonstrated at trial that, when negotiating the terms of her employment, she insisted on having the same terms and rights she had under the collective bargaining agreement with the first employer. After the second employer terminated her employment, she sued, *inter alia*, for breach of contract, and the employer contended the claim was preempted by § 301 of the LMRA. *Id.* at 401, 404. The Fifth Circuit rejected this contention, holding that, although the employee's contract incorporated the terms of a collective bargaining agreement involving her first employer into her individual contract with her second employer, the state-law breach of contract claim was not preempted. It reasoned that the agreement was individually, not collectively, bargained, and was between the employer and employee alone. *Id.* at 404 ("[Plaintiff] struck her own bargain with [the employer]. LMRA preemption would not here advance the goals of federal labor law; it would improperly tread upon the power of individuals to bargain for agreements governed by state law."). Although this case differs from *Meredith* in that Lee was covered by a collective bargaining agreement and the plaintiff in *Meredith* was not, *Meredith* teaches that a state-law breach of contract claim is not

preempted simply because the alleged contract on which the claim is based incorporates a program established by a collective bargaining agreement.

Power Systems' reliance on *Gibson v. AT&T Technologies, Inc.*, 782 F.2d 686 (7th Cir. 1986), is misplaced. Although there are similarities between the programs at issue under the collective bargaining agreements in *Gibson* and the present case, in *Gibson* the plaintiffs sued based on a state-law fraud theory for withholding information. *See id.* at 688. They alleged that their employer "improperly deprived them of the layoff allowance which was provided for in their collective bargaining agreements" by withholding information about plans to close the plant. *Id.* at 687. The plaintiffs asserted that they accepted supplemental income benefits under a collective bargaining agreement that were less than the layoff allowance that they would have received under that agreement. *See id.* at 687-88. The Seventh Circuit held that the claim was preempted, noting that "plaintiffs complain[ed] about their failure to obtain layoff benefits created by a collective bargaining agreement." *Id.* at 688. In the present case, by contrast, Lee seeks to recover based on a separate agreement that he maintains he reached with Power Systems; he is not complaining about his failure to obtain benefits created by the CBA.

C

The court next considers Power Systems' contention that the breach of contract claim is preempted because litigation of the claim will require that the court interpret or apply the CBA.

To determine whether adjudication of this cause of action requires interpretation of a CBA, the court first analyzes the elements of the claim. *See, e.g., Richter*, 83 F.3d at 97. Under Texas law, the elements of a breach of contract claim are: "1) the existence of a valid contract; 2) performance or tendered performance by the plaintiff; 3) breach of the contract by the defendant;

and 4) damages to the plaintiff resulting from the breach." *Lewis v. Bank of Am. NA*, 343 F.3d 540, 545 (5th Cir. 2003) (Texas law) (citation omitted), *cert. denied*, 540 U.S. 1213 (2004).

Power Systems contends that adjudication of Lee's claim will require that the court analyze the CBA to determine whether (1) he met eligibility requirements for enrollment in the ECO, (2) there existed the necessary surplus of employees, as defined by the CBA, (3) Power Systems was required to provide ECO, (4) Lee properly applied for ECO, and (5) Lee exhausted his contractual remedies available. The court disagrees.

As Lee has pleaded his contract claim, determining whether a valid contract was formed, whether he performed or tendered performance, whether Power Systems breached the agreement, and whether he suffered damages as a result of the breach will not require consideration of the issues that Power Systems raises. For example, if Lee demonstrates that Power Systems agreed to enroll him in the ECO and that he provided consideration therefor, it will not matter that he was ineligible or did not properly invoke the program by terms of the CBA, because Lee will have established that Power Systems entered into a binding contractual agreement with Lee individually, independent of the CBA.

D

Power Systems also argues for preemption on the basis that the court will be required to analyze the terms of the CBA to determine damages. This contention also lacks force.

Even if the court must consult the CBA to determine the amount of Lee's monthly pension benefit had he been placed in the ECO, such consideration of the agreement does not alone establish that Lee's breach of contract claim is *substantially dependent* on the CBA's terms. *See Branson*, 126 F.3d at 755-56. In *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399 (1988), the

Supreme Court stated:

> A collective bargaining agreement may, of course, contain information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled. Although Federal law would govern the interpretation of the agreement to determine the proper damages, the underlying state-law claim, not otherwise pre-empted, would stand. Thus, as a general proposition, a state-law claim may depend for its resolution on both the interpretation of a collective-bargaining agreement and a separate state-law analysis that does not turn on the agreement. In such a case, federal law would govern the interpretation of the agreement, but the separate state-law analysis would not be thereby pre-empted.

*Id.* at 413 n.12 (citation omitted). Power Systems' reliance on *Richter* to argue to the contrary is misplaced. In *Richter* an employee brought a tort claim against his employer, but the collective bargaining agreement provided the exclusive remedy for resolving negligence claims. *See Richter*, 83 F.3d at 97. The Fifth Circuit did not hold that the negligence claims were preempted simply because the court would have to look to the terms of the CBA to determine the amount of damages.

* * *

For the reasons set out, the court grants Lee's December 10, 2004 motion for leave to file his second amended complaint, and it denies Power Systems' November 29, 2004 motion to dismiss.

**SO ORDERED**.

April 27, 2005.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE